341 A.2d 74

COMMONWEALTH of Pennsylvania, Appellant,

v.

TRANSAMERICA INSURANCE COMPANY, Appellee.

Supreme Court of Pennsylvania.

Argued May 20, 1974.

Decided July 7, 1975.

Richard J. Orloski, Deputy Atty. Gen., Dept. of Justice, Harrisburg, for appellant.

Metzger, Hafer, Keefer, Thomas & Wood, Heath L. Allen, William E. Miller, Jr., Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is an appeal from an order of the Commonwealth Court, proceeding under its original jurisdiction,[1] from which the Commonwealth appealed. The Commonwealth filed a complaint in assumpsit seeking judgment in the amount of $10,000 plus interest and costs against appellee, Transamerica Insurance Company. The asserted liability was predicated upon a bond (entitled Public Employe Faithful Performance Blanket Position Bond) is-

---

1. Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, as amended, 17 P.S. § 211.401(a)(2) (Supp.1974–75).

sued by Transamerica's predecessor company which undertook to indemnify the Commonwealth against any loss, up to a maximum of $10,000 caused to the Commonwealth through the failure of designated Commonwealth employees to faithfully perform duties and/or properly account for all monies and property received by virtue of their position. Preliminary objections of appellee were overruled and an answer was filed. Thereafter, both parties filed motions for summary judgment.

Judge Kramer, on March 8, 1974, entered an order denying the Commonwealth's motion, granting the motion filed by Transamerica, and dismissing the complaint. The single issue presented in this appeal and answered in the affirmative by Judge Kramer was whether the Commonwealth was barred from recovery under the term of the bond limiting the period of time in which suit could be instituted.

The facts set forth in the record (which consist of the complaint, answer and the deposition of bond claim counsel of appellee) and found by the Learned Court below were as follows:

The bond in question became effective July 1, 1963, and remained in force through August 25, 1967. Section 6 of that instrument provided:

"No suit, action or proceeding of any kind to recover on account of loss under this bond shall be brought after the expiration of three years from the cancellation of this bond as an entirety, provided, however, that if such limitation for bringing suit, action or proceeding is prohibited or made void by any law controlling the construction of this bond, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law."

During the period that the bond was in force, an employee of the Commonwealth was suspected of embezzling funds. Prior to a definite determination of the

suspected wrongdoing of this employee, the Commonwealth notified appellee of a possible claim, on November 4, 1968. On November 15, 1968, appellee responded by requesting the results of the investigation then being conducted by the Commonwealth. In compliance, the Commonwealth, through its investigators, made available the results of its investigation up to that point. On March 28, 1969, the employee was arrested for embezzlement and on April 16, 1969, appellee forwarded proof of loss forms to the appellant. On May 22, 1969, the employee, Mr. Davis entered a plea of guilty to the indictment charging embezzlement and on August 28, 1969, the Commonwealth returned the proof of loss forms claiming a loss of $48,094.11 during the period of the bond coverage. On October 17, 1969, the Commonwealth sent to appellee a copy of its investigation to complete the file. On November 24, 1969, appellee expressed a desire for further information and was advised by appellant on November 26, 1969, that all written reports had been submitted. At this juncture, the Commonwealth expressed willingness to permit Transamerica's agent access to its complete files in the matter. This offer was accepted and an adjuster for appellee did examine the files of appellant. Additionally, at request of appellee, appellant supplied them with copies of specified checks. Appellee in June or July of 1970, requested photostatic copies of the back side of the checks in question. This request was also fully complied with by appellant. During August 1970 appellee's agents again visited with Commonwealth agents and made further examination of the records. After August 6, 1970, but before August 25, 1970, the expiration of the three-year period, appellee decided to refuse to honor the claim of appellant. Despite the cooperative negotiations that had theretofore transpired, the decision to refuse the claim was not communicated to appellant before the expiration of the contractually agreed period during which suit was to have been

instituted. Having received no information as to the status of the claim, appellant wrote to Transamerica on October 27, 1970, requesting information. This letter was not answered. Appellant was first advised of the decision to reject the claim in a telephone conversation in November 1970. After an offer of settlement of $5,000 was made by appellee and refused by appellant, this suit was instituted on May 13, 1971.

■ We agree with the conclusion of Judge Kramer that the case was ripe for disposition of the motion for summary judgment. Rule 1035(b) of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix, provides that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In this case, both parties filed for summary judgment and both agreed that the facts were not in dispute.

■■ We cannot, however, agree with the result of the Learned Court below. This Commonwealth has long recognized the validity of a policy provision limiting the time of bringing suit under its terms and rendering the normal statute of limitations for the cause of action in question inapplicable. *Howard Ins. Co. v. Hocking*, 130 Pa. 170, 18 A. 614 (1889) (see cases cited therein). Likewise, axiomatic is the principle that a contractual limitation on the right to recovery under the terms of the policy may be waived by the acts of the insurer.

> "The utmost fair dealing should characterize the transactions between an insurance company and the insured. If the insurer, . . . by any act throws the insured off his guard as to the necessity of performing some duty enjoined by the policy, the insurer should not be permitted to take advantage of the failure to act." *Fedas v. Insurance Co. of State of*

*Penna.*, 300 Pa. 555, 559, 151 A. 285, 286–7 (1930). See also *Gough v. Halperin*, 306 Pa. 230, 159 A. 447, (1932); *Evans v. Metropolitan Life Insurance Co.*, 294 Pa. 406, 144 A. 294 (1928).

■ Expressing the same concept, that an insurer will not be permitted to take advantage of an insured's failure to act where the insurer induced such a failure, we stated in *Arlotte v. National Liberty Insur. Co.*, 312 Pa. 442, 445, 167 A. 295, 296 (1933):

> "It is a well settled rule of law that a party to a contract cannot escape liability under his obligation on the ground that the other party has failed to perform a condition precedent to the establishment of such liability or to the maintenance of an action upon the contract, where he himself has caused that failure."

■ Specifically with reference to contractual limitations on the time to commence suit under the terms of a contract of insurance, the courts of this jurisdiction have upheld the validity and enforceability of these provisions where the specified time within which suit was to be brought was not unreasonable. *Lardas v. Underwriters Insur. Co.*, 426 Pa. 47, 231 A.2d 740 (1967); *Selden v. Metropolitan Life Ins. Co.*, 354 Pa. 500, 502–3, 47 A.2d 687, 688 (1946); *Howard Insur. Co. v. Hocking supra; Ercole v. Metropolitan Life Ins. Co.*, 155 Pa.Super. 549, 39 A.2d 293, 294 (1944); *O'Connor v. Allemannia Fire Insur. Co.*, 128 Pa.Super. 336, 342, 194 A. 217 (1937); *Ferguson v. Manufacturer's Casualty Ins. Co. of Phila.*, 129 Pa.Super. 276, 281, 195 A. 661 (1937). However, a provision of this nature may be extended or waived where the actions of the insurer leads the insured to believe the limitation period will not be relied upon. *McMeekin v. Prudential Insur. Co. of America*, 348 Pa. 568, 570, 36 A.2d 430, 432 (1944); *Howard Insur. Co. v. Hocking, supra; Ercole v. Metropolitan Life Insur. Co., supra; Sudnick v. Home Friendly Insur. Co.*, 149 Pa.Super. 145, 153, 27 A.2d 468, 472 (1942).

"If in the course of the negotiations the company gave the plaintiff reasonable grounds for believing that the time limit would be extended or that such provision would not be strictly enforced, it could not subsequently insist on its strict enforcement without giving him a reasonable time thereafter to bring his action." *McMeekin v. Prudential Life Insur. Co. of America, supra* at 572, 36 A.2d at 432.

It was also recognized that the waiver need not be expressed but "may be inferred from the acts of the insurers evidencing a recognition of liability, or even from their denial of obligation exclusively for other reasons." *McMeekin v. Prudential Life Insur. Co. of America, supra* at 573, 36 A.2d at 432.

In reaching the conclusion that this record did not support a waiver, Judge Kramer observed:

"It is entirely conceivable under the facts of this case that the agents of Transamerica with forethought intentionally did not make any such commitment or misleading statements; and that they set out on a course to investigate this case through a point of time beyond which the contract permitted the filing of a lawsuit. We do not condone the business practice performed by bonds claim counsel of Transamerica in deciding to deny the claim between August 6, 1970 and August 25, 1970 without giving the Commonwealth the benefit of such knowledge. It seems to us that any business man desirous of obtaining the good will of his customer and interested in additional insurance and bond business would have given the Commonwealth notice of his decision. Unfortunately we do not decide cases on good or bad business practice. We are bound to decide cases on the law. As we read the cases, we must find somewhere in the record some action, statement or direction by the insurance company, its agents, servants or employes upon which the Commonwealth relied

before we are permitted to infer a waiver of the contractual period of limitation."

We are forced to disagree because our reading of the record compels the conclusion that Transamerica gave appellant reasonable grounds for believing that the time limit would not be strictly enforced.

Most significant is the fact that the negotiations between the parties were ostensibly being conducted on friendly terms and by virtue of this posture the appellee gained full access to the complete files of appellant. As we have had occasion to previously observe:

"It is undoubtedly true that any act which tends to mislead the plaintiff, while parties are dealing on friendly terms, to avoid litigation, will be held to be evidence of a waiver of such limitation . . ." *Howard Insur. Co. v. Hocking, supra,* 130 Pa. at 180–81, 18 A. at 615.[2]

Although appellee did not expressly indicate its willingness to waive enforcement of section 6 and did not acknowledge liability, its conduct was such as to reasonably convey to the insured that the limitation provision would not be strictly enforced and that after the investigation was completed the claim would be honored unless some other reason for rejection became apparent.

In our judgment, the following facts are most persuasive in forcing the conclusion that not only was

---

2. In the *Howard* appeal, the act which was asserted as misleading to the plaintiff-appellee occurred during litigation. This Court distinguished that situation from one, as here, where the parties were dealing on friendly terms.

"but after suit has been brought, and the parties are dealing at arms-length, the rule does not apply with the same strictness, and much more positive evidence of actual misleading, if not of intent to mislead, is necessary to prove a waiver by estoppel." Id. at 181, 18 A. at 615.

It is therefore clear that the *Howard* decision is distinguishable and that Judge Kramer's reliance thereon was misplaced under the instant facts. For the same reason, Judge Kramer's reliance on our decision in *Fratto v. New Amsterdam Cas. Co.,* 434 Pa. 136, 252 A.2d 606 (1969) was mistaken.

appellant misled but that it was as a result of a deliberate effort on the part of appellee. From the time that the errant employee confessed guilt in the criminal proceeding, liability of Transamerica was relatively apparent. Throughout the negotiations, Transamerica at no point suggested any reason why they might not be liable under the bond. Even at this juncture no basis for avoiding liability other than appellant's failure to commence suit timely has been offered. Although it was determined within the specified time that they would resist the claim [3] this fact was not immediately communicated to appellant to afford them an opportunity of initiating suit within the agreed period. This course of action was elected by appellee in spite of the Commonwealth's full cooperation and complete candor during the investigation. When appellant formally requested a statement of the position of the appellee, the latter delayed its response.

The portrayal of a bona fide investigation by appellee during the course of which it failed to suggest any grounds upon which it might deny liability, and the withholding of the decision to reject the claim, particularly where there was ample grounds to believe that if the parties were in fact acting in good faith liability would be eventually acknowledged, supply a basis for finding that the company by its actions had lulled the insured into neglecting the institution of suit within the required time. Additionally, the simulated good faith relationship was also clearly designed to lull the insured into believing that the time limitations of the policies need not be complied with strictly. Although there was no expressed waiver of the time limitation or a definitive acknowledgement of liability by the insured we are satisfied that this record presents a classic example where an insured could reasonably conclude from the course of the negotia-

3. As has been noted, no reason appears in this record as the basis for that decision.

tions that if there was to be a denial of liability it would have been "exclusively for other reasons." *McMeekin v. Prudential Insur. Co., supra.*

For the aforesaid reasons, the order of the Commonwealth Court granting Transamerica's motion for summary judgment is reversed and the said motion is denied. The order of the Commonwealth Court denying the Commonwealth's motion for summary judgment is reversed and the said motion is granted. Judgment in the amount of $10,000 plus interest dated from October 17, 1969 [4] is entered in favor of appellant and against the appellee.

It is so ordered.

POMEROY, J., concurs in the result.

---

4. This is the date on which the Commonwealth transmitted to the appellee the remainder of the information which was necessary to determine the legitimacy of the claim. Had appellee, in fact, been acting in good faith, it would have been in a position from this point to have acknowledged liability.